# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

NATHANIEL FOSTER,
*Prisoner Identification No. 17-966,*

   Petitioner,

v.

RICHARD D. DOVEY, *Warden,* and
ATTORNEY GENERAL OF MARYLAND,

   Respondents.

Civil Action No. TDC-15-3979

## MEMORANDUM OPINION

Petitioner Nathaniel Foster, an inmate confined at the Maryland Correctional Institution – Hagerstown, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition is DISMISSED WITH PREJUDICE IN PART as time-barred but is STAYED regarding the claim alleging that Foster's life sentence is unconstitutional based on *Miller v. Alabama*, 567 U.S. 460 (2012).

## BACKGROUND

In November 1984, Foster was convicted after a jury trial in the Circuit Court for Baltimore City, Maryland of first-degree felony murder, attempted armed robbery, and use of a handgun in the commission of a crime of violence. He was sentenced to life imprisonment on the murder count, a concurrent sentence of 15 years on the handgun offense, and a consecutive sentence of 10 years on the robbery count. Foster appealed, raising the following issues: (1) erroneous admission of hearsay testimony; (2) the refusal to give a requested jury instruction; (3)

insufficient evidence to convict on first-degree murder and the handgun offense; (4) the failure to strike certain eyewitness testimony; and (5) improper exclusion of evidence of descriptions of other suspects near the murder scene. In an unreported opinion dated June 25, 1985, the Court of Special Appeals of Maryland affirmed the judgment of conviction. On October 21, 1985, the Court of Appeals of Maryland denied Foster's petition for a writ of certiorari. *Foster v. State*, 498 A.2d 1184 (Md. 1985). Foster did not seek further review. Therefore, his conviction became final for direct appeal purposes on January 19, 1986. *See* Sup. Ct. R. 13 (providing that a petition for a writ of certiorari to the United States Supreme Court to review a judgment entered by a state court of last resort must be filed within 90 days after entry of judgment).

Foster then filed a number of petitions and motions in the Circuit Court for Baltimore City, including a petition for post-conviction relief, filed on January 20, 1995 and denied on April 30, 1997; a motion for modification of sentence, filing date unknown, denied on October 9, 1997; a petition for a writ of habeas corpus, filed on December 10, 1999 and denied on April 17, 2000; a motion to alter or amend judgment, filed on May 10, 2000 and denied on July 26, 2000; a motion to correct an illegal sentence, filed on November 26, 2001 and denied on January 3, 2002; a second motion to alter or amend judgment, filed on February 7, 2002; and another motion to correct illegal sentence, filed on November 3, 2011 and denied on April 3, 2012.

Foster filed his Petition for a Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254 by giving it to prison officials for mailing on December 18, 2015, such that it will be deemed filed on that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding that a prisoner's submission to the court is deemed filed on the date on which the prisoner relinquishes control over the document). In the Petition, Foster claims that he "was sentenced to life in prison on a verdict [for which] the jury never orally announced the degree of murder in open court."

Pet. at 3, ECF No. 1. As a result, Foster argues, his sentence is illegal because the "failure of the jury to announce [the] degree of murder in their verdict strip[s] the trial judge of jurisdiction to proceed to sentencing," *Id.* (emphasis omitted). Foster also argues that his sentence of life imprisonment, imposed while he was a juvenile, is unconstitutional based on *Miller v. Alabama*, 567 U.S. 460 (2012).

Because the Petition did not provide information necessary for the Court to evaluate the claims, the Court ordered Foster to supplement the Petition using forms provided by the Court. After Foster filed a Supplemental Petition, the Court issued an Order requiring Respondents to file an Answer to the Supplemental Petition. Respondents filed a Limited Answer, seeking dismissal of the Petition based on the argument that Foster's claims are time-barred. Foster filed a Reply to Respondents' Answer.

## DISCUSSION

### I. Failure to Specify Degree of Murder

Respondents argue that the Petition is time-barred. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to *habeas* petitions filed by a person convicted in state court in a non-capital case. *See* 28 U.S.C. § 2244(d) (2012). Specifically:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Because Foster's judgment became final for direct appeal purposes before the enactment of AEDPA, the one-year statute of limitations period began to run on AEDPA's effective date, April 24, 1996. *See Wood v. Milyard*, 566 U.S. 463, 469 (2012) ("For a prisoner whose judgment became final before AEDPA was enacted, the one-year limitations period runs from the AEDPA's effective date: April 24, 1996."); *see also Brown v. Angelone*, 150 F.3d 370, 375-76 (4th Cir. 1998) (holding that for prisoners whose convictions became final prior to AEDPA's enactment, the limitations period began to run with AEDPA's effective date). However, § 2244(d) also provides that: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In Foster's case, his state petition for post-conviction relief was pending when the AEDPA clock began ticking. That petition was denied on April 30, 1997. Foster filed an application for leave to appeal the denial on June 12, 1997, which was dismissed by the Court of Special Appeals on July 23, 1997 because it was filed after the 30-day deadline for filing such an application. Because Foster's application for leave to appeal was not timely filed, it was not "properly filed." 28 U.S.C. § 2244(d)(2). Thus, Foster's post-conviction proceedings became final on May 30, 1997, 30 days after the circuit court's denial of the petition on April 30, 1997.

4

The criminal docket also reflects the denial of a motion for modification of sentence on October 9, 1997, but does not reveal when the motion was filed. Foster did not appeal the denial. Even assuming that the motion for modification of sentence was filed before May 30, 1997, AEDPA's limitations period began to run 30 days after the denial of that motion, or on November 8, 1997. *See* Md. Rule 8–204(b). Because no petitions for collateral review were filed over the next 12 months, the limitations period expired on November 7, 1998. Thus, Foster's later state court filings, beginning with his state petition for a writ of habeas corpus filed on December 10, 1999, could not serve to toll the statute of limitations for filing his federal petition, as it had already expired. Accordingly, the Court concludes that Foster's federal petition for writ of habeas corpus is time-barred.

Under certain circumstances, AEDPA's limitations period may be subject to equitable tolling. *See, e.g., Harris v. Hutchinson,* 209 F.3d 325, 328-30 (4th Cir. 2000); *see also United States v. Prescott,* 221 F.3d 686, 688 (4th Cir. 2000). To be entitled to equitable tolling, a petitioner must show that: (1) the petitioner acted diligently in pursuing available rights; and (2) some extraordinary circumstance stood in the way and prevented timely filing. *Holland v. Florida,* 560 U.S. 631, 649 (2010). The extraordinary circumstance must be beyond the petitioner's control or external to the petitioner's own conduct. *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*).

Apparently recognizing that the Petition is untimely, Foster seeks equitable tolling. He suggests that the Maryland appellate courts have created the extraordinary circumstance beyond his control which prevented him from timely filing his federal Petition. Specifically, he states that in interpreting the statutory requirement that "[w]hen a court or jury finds a person guilty of murder, the court or jury shall state in the verdict whether the person is guilty of murder in the

first degree or murder in the second degree," Md. Code Ann., Crim. Law, § 2-302 (2002), the Court of Appeals and Court of Special Appeals "have either added their own language or ignored the mandatory language enacted in the statute." Pet. at 5. Leaving aside whether Foster's allegation is correct, he has not shown how this circumstance affected his ability to file a timely federal *habeas* petition.

Nor has Foster shown that he has been pursuing his rights diligently. *Holland*, 560 U.S. at 649. Foster states that he did not discover the "adversarial breakdown in the jury verdict" until approximately 2011 and "took prompt action as soon as he realized that he should act." Pet. at 16. He then filed a second motion to correct an illegal sentence on November 3, 2011, which the circuit court denied on April 3, 2012. Even assuming that Foster was unaware of the Maryland statute at issue from the time of his conviction in 1984 until 2011, he does not dispute the existence of the statute during this period. Moreover, Foster's argument that he was "not trained in the science of law and was not required to argue that his sentence was inherently illegal," Pet. at 15, is unpersuasive. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (noting that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling"). The Court therefore rejects Foster's argument that he is entitled to equitable tolling of the statute of limitations.

Foster also argues that application of the statute of limitations would cause a "fundamental miscarriage of justice." Pet. at 1, 18. The United States Supreme Court has recognized a "miscarriage of justice" exception to excuse various forms of procedural default, but it has limited this exception to claims in which the petitioner credibly asserts actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013); *Schlup v. Delo*, 513 U.S. 298, 322 (1995). In *McQuiggin*, the Supreme Court held that the "actual innocence" exception could

6

serve as a basis to grant relief from the expiration of the limitations period of § 2244(d). *Id.* at 386. A credible claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In addition, the petitioner must show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327; *McQuiggin*, 569 U.S. at 386 (stating that "tenable actual-innocence gateway pleas are rare"). Here, Foster has made no argument, and presents no evidence to support a claim, that he is actually innocent of the crimes for which he was convicted. He therefore has not offered a basis to excuse his untimely Petition based on a fundamental miscarriage of justice.

## II. Constitutionality of Life Sentence

Foster asserts that the Court should consider his specific claim regarding the constitutionality of his life sentence because it is based on a subsequent change in the law, specifically, the Supreme Court's ruling in 2012 that a sentencing scheme that mandates that a juvenile be sentenced to life imprisonment without the possibility of parole violates the Eighth Amendment. *Miller v. Alabama*, 567 U.S. 460, 479-80 (2012) (stating that a sentencing judge must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison"). When there is a change of relevant intervening law, the limitations period does not begin to run until "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

7

review." 28 U.S.C. § 2244(d)(1)(C). In 2016, the holding of *Miller* was made retroactively applicable. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016).

At first glance, *Miller* appears inapplicable to Foster's claims because although Foster was a juvenile at the time of the commission of the crime for which he was convicted, he received a sentence of life imprisonment, not life imprisonment without the possibility of parole. Foster, however, asserts that his sentence "in essence was transform[ed] without due process of law into a life sentence without the possibility of parole," Suppl. Pet. at 4, ECF No. 4, through a policy of former Maryland Governor Parris N. Glendening that an individual serving a life sentence would not be granted parole absent very limited circumstances, a policy referred to as "life means life." *Id.* In Foster's case, the Maryland Court of Special Appeals held, in affirming the denial of Foster's motion to alter or amend the judgment, that because a governor always retains discretion in granting or denying parole, Foster continues to serve a sentence of life imprisonment with the possibility of parole. *Foster v. Kupec*, No. 1841, at 6-7 (Md. Ct Spec. App. June 20, 2001) (citing *Lomax v. Warden*, 741 A.2d 476, 480-81 (Md. 1999)).

That decision was entered prior to the Supreme Court's rulings in *Miller* and *Montgomery*. Since then, courts have been confronted with the question whether Maryland's parole system provides meaningful review to juveniles with life sentences, sometimes referred to as "juvenile lifers," such as Foster. Currently pending in this District is a case, in which Foster is a named plaintiff, that challenges the constitutionality of Maryland's parole system as applied to juvenile lifers whose sentences ostensibly provide the possibility of parole. *Maryland Restorative Justice Initiative v. Hogan*, No. ELH-16-1021, 2017 WL 467731 (D. Md. Feb. 3, 2017). In denying a motion to dismiss, the court held that the plaintiffs had "sufficiently alleged that Maryland's parole system operates a system of executive clemency, in which opportunities

for release are 'remote,' rather than a true parole scheme in which opportunities for release are 'meaningful' and 'realistic,' as required by" *Graham v. Florida,* 560 U.S. 48, 75 (2010) (forbidding sentences of life without parole for juveniles committing non-homicide crimes). *Maryland Restorative Justice Initiative,* 2017 WL 467731 at *27.

On February 6, 2018, the Court of Appeals of Maryland heard argument in four cases challenging sentences of life imprisonment with the possibility of parole imposed on juveniles on the grounds that there is no meaningful opportunity to obtain release under the existing parole system. *See Carter v. State,* No. 054 (Md. Oct. 19, 2017); *Bowie v. State,* No. 055 (Md. Oct. 19, 2017); *McCullough v. State,* No. 056 (Md. Oct. 19, 2017); *State v. Clements,* No. 057 (Md. Oct. 19, 2017).

Because Foster's claim that his sentence of life imprisonment with the possibility of parole is fairly construed as based on a new rule of constitutional law announced in *Miller* and made retroactive by *Montgomery,* the Court concludes that it was timely filed. *See* 28 U.S.C. § 2244(d)(1)(C). However, it does not appear that Foster has brought his claim before any state court. Before this court may consider the merits of Foster's claim regarding his sentence he must first exhaust the claim in state court. *See* 28 U.S.C. § 2254(b), (c); *Preiser v. Rodriguez,* 411 U.S. 475, 491 (1973). Although Foster has exhausted his direct appeal process and has previously filed for post-conviction relief, he may present his Eighth Amendment claim based on *Miller* and *Montgomery* in state court in a motion to reopen post-conviction proceedings. *See* Md. Code Ann., Crim. Proc. § 7-104 (2008) (providing that post- conviction proceedings may be reopened "in the interests of justice"). Foster likely may also present his Eighth Amendment claim by way of a motion to correct illegal sentence. Md. Rule 4-345(a) (providing that a court may correct an illegal sentence at any time).

Under *Rhines v. Weber*, 544 U.S. 269 (2005), a petitioner who is able to demonstrate good cause for failing to exhaust a claim may have the federal *habeas* petition stayed while the petitioner seeks to present the unexhausted claim to a state court. *Id.* at 277. A stay is available only where the unexhausted claims are potentially meritorious and no dilatory tactics are shown. *Id.* In light of the pending litigation in which Foster's claim or similar claims are currently under consideration by federal and state courts, the Court finds that Foster has satisfied the good-cause prong of *Rhines*. Accordingly, stay and abeyance will be granted in this case to permit Foster to present his unexhausted claim in state court in a motion to re-open post-conviction proceedings or in a motion to correct an illegal sentence. Foster is cautioned that his claim must be so presented and any denial of the claim must be appealed to the highest state court with authority to consider the claim in order for it to be property exhausted for purposes of federal *habeas* review.

### III. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the petitioner on the issue of the jury's failure to specify the degree of murder, a certificate of appealability is required before an appeal may proceed on that claim. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied

on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* at 478.

Here, Foster's claim is dismissed on procedural grounds, and, upon review of the record, this Court finds that Foster has not made the requisite showing. The Court therefore declines to issue a Certificate of Appealability. Foster may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DISMISSED IN PART WITH PREJUDICE as time-barred as to Foster's claim that he "was sentenced to life in prison on a verdict [for which] the jury never orally announced the degree of murder in open court." Pet. at 3. His claim that his life sentence is unconstitutional under *Miller* and *Montgomery* is deemed timely and may proceed, but the Petition shall be stayed pending exhaustion of state remedies on that claim. The Court declines to issue a Certificate of Appealability on the dismissed claim. A separate Order shall issue.

Date: April 27, 2018

THEODORE D. CHUANG
United States District Judge